UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| CENVEO CORP., | Civil No. 08-5521 (JRT/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| SOUTHERN GRAPHIC SYSTEMS, INC., MIKE AUSTIN, SHAWN AUSTIN, PAUL PEDERSON, EMILY RYAN, and SUSAN SPEARS, | |
| Defendants. | |

Jonathan S. Parritz, **MASLON EDELMAN BORMAN & BRAND, LLP**, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402; and Richard S. Busch, **KING & BALLOW LAW OFFICES**, 315 Union Street, Suite 1100, Nashville, TN 37201, for plaintiffs.

Frederick E. Finch and Jonathan P. Norrie, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3707, for defendants.

On November 13, 2008, plaintiff Cenveo Corp. ("Cenveo") moved for a preliminary injunction against defendants Southern Graphic Systems, Inc. ("SGS"), Mike Austin, Shawn Austin, Paul Pederson, Emily Ryan, and Susan Spears (collectively, "defendants"). Plaintiffs sought to enjoin defendants from working with former and current Cenveo clients and from using Cenveo's confidential and proprietary information. Based on oral argument and the written briefings, the Court now denies in part and grants in part Cenveo's motion for a preliminary injunction.

## BACKGROUND

Cenveo provides printing, publishing, graphics arts, and direct marketing services and operates a facility in Minneapolis that is primarily engaged in pre-press work. (Docket No. 19 at 2.) Pre-press work involves the conversion of photographs, artwork, and text into a medium that can be used by a commercial printer to create forms, catalogs, advertising materials, and other graphic paper media. (Docket No. 34 at 2.) Cenveo provides services to many clients, including Target, Best Buy, and OfficeMax. (Docket No. 19 at 2.) Cenveo also directly competes for these clients' business with defendant SGS. (*Id.*)

Cenveo's case is based on events that transpired from August to October 2008. As of September 26, 2008, all individual defendants were employed with Cenveo in Minneapolis. (*Id.*) The individual defendants played key roles in the management of Cenveo's relationship with Target, Best Buy, OfficeMax, and DKNY. Mike Austin was a sales representative for Cenveo and the other individual defendants were members of Mike Austin's sales and accounting team. (Docket No. 34 at 3.) Cenveo alleges that in August or September 2008, some or all of the individual defendants began planning to leave Cenveo for SGS and conspired to recruit Cenveo employees and transfer Cenveo business relationships to SGS. (Docket No. 19 at 3.) Cenveo alleges that there were four aspects of this conspiracy.

First, Cenveo claims that the individual defendants used their positions of trust and authority to reduce Cenveo business volume prior to their resignations. Cenveo claims that this first step was necessary because the individual defendants determined that the

volume of business being done at Cenveo would be too large to easily transfer to SGS. Cenveo alleges that the individual defendants planned to ramp business volume back up once the clients transferred their business from Cenveo to SGS. (*Id.* at 4.) Second, Cenveo claims that the individual defendants worked to convince Cenveo's clients to move their business from Cenveo to SGS. Third, Cenveo claims that defendants worked together to hire away Cenveo's sales and production staff to increase SGS's capability to manage these new business relationships. (*Id.* at 6.) In particular, Cenveo notes that the individual defendants arranged for an "after-hours" meeting between current Cenveo employees and SGS, and that SGS set up an open house or a "job-fair" at their Brooklyn Park facility as a means of hiring away Cenveo employees. Cenveo alleges that these initial actions were done while individual defendants were still employed by Cenveo. (*Id.* at 4-6.) Fourth, Cenveo claims that the final part of the conspiracy focused on the individual defendants' disclosure to SGS of Cenveo's trade secrets. Cenveo identifies two acts whereby the individual defendants took trade secrets to SGS: Spears's retention of job history information (which included records of transactions and internal costs) and Shawn Austin's retention of a USB flash drive after their resignations from Cenveo. (*Id.* at 10.)

Cenveo originally brought this action against defendants on October 14, 2008, and filed an amended complaint on November 19, 2008, alleging a breach of a duty of loyalty to Cenveo by the individual defendants, tortious interference with Cenveo's business relationships, tortious interference with Cenveo's employees, and misappropriation of

trade secrets. Cenveo also made claims for unjust enrichment and unfair competition that are not addressed in the parties' briefs on the instant motion.

A month after filing their original complaint, Cenveo moved for a preliminary injunction, claiming that injunctive relief is necessary to preserve the status quo between the parties pending a final determination of the merits of their claims. (*Id.*) Specifically, Cenveo seeks to

(1) enjoin the individual defendants from doing any work relating to any of Cenveo's current or former clients;

(2) enjoin SGS from doing any work for Cenveo's current or former clients which it was not doing as of September 1, 2008; and

(3) enjoin all defendants from using Cenveo's confidential and proprietary information (Docket No. 19 at 1.)

Defendants oppose the motion for preliminary injunction, arguing that Cenveo failed to carry its burden for preliminary injunctions under *Dataphase*.

## DISCUSSION

### I. STANDARD OF REVIEW

In determining whether a party is entitled to a preliminary injunction, the Court considers "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). The Eighth Circuit has recently clarified the third prong of this test, noting that "where a preliminary injunction is sought to enjoin . . . [a] government action based on

presumptively reasoned democratic processes[,] . . . courts must make a threshold finding that a party is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds,* 530 F.3d 724, 732-33 (8th Cir. 2008). In circumstances that do not fall under this category, such as those at issue here, courts merely assess whether the plaintiff has a "fair chance of prevailing." *Id.* at 732. "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-30 (2d. ed. 1995)).

The Court's consideration of Cenveo's motion is separated into two separate analyses: whether Cenveo is entitled to injunctive relief prohibiting the defendants from working with current and former Cenveo clients as outlined in injunctive provisions (1) and (2); and whether Cenveo is entitled to injunctive relief prohibiting all defendants from using Cenveo's confidential and proprietary information as requested in injunctive provision (3).

## II. ENJOINING DEFENDANTS FROM WORKING WITH CURRENT AND FORMER CENVEO CLIENTS

### A. The Threat of Irreparable Harm

The irreparable harm factor focuses on the harm or potential harm to the plaintiff of defendants' conduct or threatened conduct. *Dataphase,* 640 F.2d at 114. "Failure to show irreparable harm is an independently sufficient ground upon which to deny a

preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citing *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996)).

Cenveo claims that the purposeful arrangement by defendants to transfer Target business to SGS and to recruit Cenveo employees to SGS inhibited Cenveo's ability to perform already contracted work for Target. (Docket No. 19 at 20.) As a result, Cenveo claims that its business reputation and relationship with Target will be irreparably harmed because there is no legal remedy that can mend damaged business relationships. *See Vital Images, Inc. v. Martel*, No. Civ. 07-4195, 2007 WL 3095378 at *18-19 (D. Minn. Oct. 19, 2007).

Defendants counter that monetary damages are often awarded for lost profits and lost business opportunities. (Docket No. 34 at 11.) "A dollar loss invokes the Court's legal powers, as opposed to its equitable powers." *Halikas v. Univ. of Minn.*, 856 F. Supp. 1331, 1334 (D. Minn. 1994) (citing *Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60, 75-76 (1992)). Although the harm to business relationships or industry reputation may not be quantifiable (and thus an injunction may be appropriate), the issue is what an injunction would do to preserve the status quo.

The Court is not persuaded that injunctive relief is necessary to prevent Cenveo from being irreparably harmed by defendants' continued business relationships with current and former Cenveo clients. The purpose of a preliminary injunction is "to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d 109. By contrast, defendants' alleged conduct underlying a breach of a duty of loyalty and tortious interference with Cenveo clients and employees occurred some time ago. The status quo

refers to the *existing* state of affairs, and preliminary injunctive relief cannot go back in time and recapture the status quo of an earlier time. That is, the Cenveo employees have left for SGS and the Court cannot require the former Cenveo employees to return to their old Cenveo jobs.

Moreover, lost profits and lost business can be readily calculated and redressed through monetary relief. "When there is an adequate remedy at law, a preliminary injunction is not appropriate." *Watkins*, 346 F.3d at 844. Here, the Court has an adequate legal remedy at its disposal: it may award monetary damages if Cenveo prevails on their duty of loyalty and tort claims.

Cenveo failed to show that it would be irreparably harmed if the Court does not enjoin defendants from working with current and former Cenveo clients. Generally, the Court may cease its *Dataphase* analysis where there is no finding of irreparable harm. *See id.* It is worth briefly mentioning, however, that balancing the harms of and considering the public interest in limiting defendants' client relationships also weighs against issuing provisions (1) and (2) of Cenveo's requested relief.

### B. The Balance of Harms and the Public Interest

The balance of harms factor requires the Court to consider "the balance between the harm [to the movant] and the injury that the injunction's issuance would inflict on other interested parties." *Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 929 (8th Cir. 1994). "What must be weighed is the threat to each of the parties' rights and economic interests that would result from either granting or denying the

preliminary injunction." *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 751 (N.D. Iowa 2005).

Defendants claim that their ability to make a living will be compromised if the Court restricts which clients they may work with. (Docket No. 34 at 21.) This is clearly relevant when balancing the harms of all interested parties. Further, the potential effect on third parties indicates that the public interest would not support granting this type of injunctive relief.

By prohibiting SGS from performing work for current and former Cenveo clients that it was not doing as of September 1, 2008, the Court would be limiting those clients' right to work with a vendor of their choosing. It is unreasonable, given the concededly fluid, competitive pre-press industry, for the Court to prevent third parties like Target from selecting a vendor of their choosing. Indeed, in the pre-press industry, it appears that loyalty to a vendor is often trumped by cost or convenience. Interference in that business dynamic is inappropriate in this case because defendants and, importantly, third-party clients, would be most harmed by the injunctive relief.

Because Cenveo has not shown that it will be irreparably harmed and because the ultimate harm may actually fall on defendants or non-party clients, the remaining *Dataphase* factors cannot tip the balance in favor of Cenveo's motion. Accordingly, the Court denies Cenveo's request to enjoin defendants from working with current and former clients as outlined in Cenveo's motion. (*See* Docket No. 17.)

## II.   ENJOINING DEFENDANTS FROM DISCLOSING CENVEO'S CONFIDENTIAL PROPRIETARY INFORMATION

The Court concludes, however, that Cenveo's motion to enjoin defendants from disclosing or using Cenveo's confidential proprietary information should be granted. The parties' contentions center on whether Cenveo has shown that they are likely to succeed on the merits of a claim for misappropriation of trade secrets. Thus, the Court begins its *Dataphase* analysis with that factor.

### A.   Fair Chance of Success on the Merits

When considering a plaintiff's likelihood of success on the merits under *Dataphase*, and in circumstances "where a preliminary injunction is sought to enjoin . . . [a] government action based on presumptively reasoned democratic processes," courts should determine whether the plaintiff has a mere "fair chance of prevailing." *Rounds*, 530 F.3d at 732.

"Even when there is no contractual duty, employees have a common law duty not to use trade secrets or confidential information obtained from their employer." *Eaton Corp. v. Giere*, 971 F.2d 136, 141 (8th Cir. 1992) (citing *Jostens, Inc. v. Nat'l Computer Sys.,* 318 N.W.2d 691, 701 (Minn. 1982)). To prove misappropriation of trade secrets under Minnesota law, a plaintiff must show that (1) a trade secret existed, (2) the defendant acquired the trade secret through a confidential relationship, and (3) the defendant used or disclosed the trade secret. *Jostens*, 318 N.W.2d at 701. Information is considered a confidential trade secret where (1) the information is not generally known or readily ascertainable, (2) the information derives real or potential independent economic

value from its secrecy, and (3) the information has been protected by reasonable efforts to maintain its secrecy.  Minn. Stat. § 325C.01 (2002).

Cenveo claims that defendants misappropriated trade secrets on two occasions. First, Cenveo alleges that job histories for Cenveo Clients were taken by Susan Spears upon her resignation from Cenveo.  Cenveo claims that the job histories were not readily available to anyone, that Cenveo dedicated significant resources to prepare that information, and that Cenveo limited access to the information to only those employees who needed to know the information.  (Docket No. 19 at 18-19.)

Defendants respond that Cenveo is unlikely to succeed on this claim because they have not specifically identified the allegedly secret information.  An injunction is inappropriate if a plaintiff fails "to identify specific trade secrets and instead produc[es] long lists of general areas of information which contain unidentified trade secrets." *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (8th Cir. 1987). Defendants claim that Cenveo's description of the alleged trade secrets amounts to only "general areas" of information that cannot constitute a trade secret.  (Docket No. 34 at 19.)  Further, defendants claim that no actual disclosure of confidential information has occurred, as required in *Jostens*.  Defendants also claim that without actual disclosure, Cenveo failed to demonstrate "a high degree of probability of inevitable disclosure." *See IBM Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 (D. Minn. 1992).  The Court disagrees with defendants.

Cenveo submitted as exhibits multiple copies of the subject job histories.  The Court reviewed the documents, and finds that there is a sufficient basis at this stage of the

litigation to find that the job histories likely constitute trade secrets under Minnesota law. *See id.* It is plausible that SGS would unfairly benefit from knowledge of this internal information because the job histories show when Cenveo completed certain jobs for its clients and imply Cenveo's profit margin. That information is particularly relevant in the pre-press industry, as it creates opportunities for SGS to gain competitive advantages by targeting certain clients at certain times.

Further, Cenveo has a fair chance of succeeding on its claim for misappropriation of these trade secrets. The circumstances indicate that if Cenveo's proprietary information, which was taken by former Cenveo employee Spears, was not actually disclosed, it is sufficiently probable that the information would inevitably be disclosed. Although the Court makes no finding as to Spears's motives for keeping the job history documents, discrepancies in her explanations for doing so and markings in the "original" documents turned over by defendants may suggest that her motives were not altruistic. The Court therefore finds that Cenveo has shown it has a fair chance of success on the merits of its claim for misappropriation of job history information.

Cenveo refers to a second set of trade secrets as "Cenveo's proprietary and confidential business records" that were allegedly copied to a USB flash drive by Shawn Austin. (Docket 19 at 20.) The Court agrees with defendants that Cenveo failed to specify what trade secrets were contained on the USB flash drive that Shawn Austin allegedly took to SGS. Cenveo merely claims that there *must* have been confidential information on that flash drive, and that allegation hardly suggests that Cenveo has a fair chance of success for a claim for misappropriation of trade secrets. Failure to satisfy the

success-on-the-merits factor, alone, may be sufficient to deny a motion for a preliminary injunction. *See Rounds,* 530 F.3d at 738. Accordingly, the Court denies Cenveo's request for injunctive relief addressing information on the USB flash drive. The Court's *Dataphase* analysis of defendants' request for injunctive relief continues, however, based on Cenveo's claim of misappropriation of job histories.

### B. The Threat of Irreparable Harm

"[M]erely possessing trade secrets and holding a comparable position with a competitor does not justify an injunction." *IBM*, 941 F. Supp. at 101. Although Cenveo has not shown that Spears *actually* disclosed confidential job history information to SGS, Spears's numerous explanations about how the job histories were retained, as well as the seemingly obvious purpose behind retaining job history information, suggest that it is very likely that some of the confidential information has been or could be disclosed to SGS. In this case, Spears did not merely have knowledge of the job history information. *See id.* Instead, Spears retained an original or a copy of the job histories after she resigned from Cenveo. These circumstances show that there is "a high degree of probability of inevitable disclosure." *Surgidev Corp. v. Eye Tech., Inc.,* 648 F. Supp. 661, 695 (D. Minn. 1986). As a result, issuance of a preliminary injunction is appropriate to prevent Cenveo from being irreparably harmed by continued disclosure or use by SGS of Cenveo's confidential proprietary information.

### C. The Balance of Harms and Public Interest

Cenveo expends a substantial amount of resources to compile and maintain client job histories and those records would not otherwise be available to Cenveo's competitors. Given that defendants claim not to have misappropriated Cenveo job histories, there would be no burden on defendants if they are enjoined from reviewing those records. Moreover, the public interest supports the protection of confidential business records.

### CONCLUSION

The Court finds that a preliminary injunction is appropriate to restrict defendants from using Cenveo's confidential proprietary information including job history information retained by Spears. Defendants claim that the preliminary injunction should be conditioned on a bond sufficient to protect defendants from substantial harm. *See* Fed. R. Civ. P. 65(c). The individual defendants, however, claim that they have not disclosed job history or other confidential information to SGS. The Court therefore finds that defendants will not be harmed by an order prohibiting future disclosure and does not require that plaintiffs post a bond.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff Cenveo Corp.'s motion for preliminary injunction against defendants [Docket No. 17] is **GRANTED in part** and **DENIED in part**, as follows:

1. All defendants are enjoined from disclosing or using Cenveo's confidential proprietary information including job histories retained by defendant Susan Spears on her resignation from Cenveo. This injunction shall be in effect until further order of the Court.

2. Cenveo's motion for preliminary injunction is **DENIED** in all other respects.

DATED: January 22, 2009　　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge